**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| vs. | : | Crim. No. 23-CR-661 (EP) |
| | : | |
| BADER ALZAHRANI | : | |
| | : | |

**UNITED STATES' MEMORANDUM OF LAW**
**REGARDING THE CLASSIFIED INFORMATION PROCEDURES ACT AND**
**MOTION TO DESIGNATE CLASSIFIED INFORMATION SECURITY OFFICER**

The United States of America, by and through its attorney, files this

Memorandum of Law regarding the Classified Information Procedures Act, 18

U.S.C. Appendix 3 ("CIPA"), to apprise the Court of the applicability of CIPA to

matters relating to classified information that may arise in connection with

the above-captioned matter, both before and during trial.  To assist the Court

in handling any CIPA-related matters that may arise in this case, the

Government herein provides the Court with a detailed description of the

procedures mandated by the CIPA statute for protecting such classified

information. In addition, the Government makes a motion within the

memorandum for a pretrial conference under Section 2 of CIPA, and also

requests that the Court enter the attached proposed order appointing a

Classified Information Security Officer ("CISO") in this matter.

## I.     PROCEDURAL BACKGROUND

On January 30, 2023, Bader Alzahrani ("Alzahrani") was arrested by the Federal Bureau of Investigation ("FBI") based on a federal complaint charging him with one count of receipt of stolen vehicles, in violation of 18 U.S.C. § 2313(a), and one count of transportation of stolen vehicles, in violation of 18 U.S.C. § 2312.  *See* D.E. 1.[1]  On August 16, 2023, a two-count indictment was filed against Alzahrani that charged him with the same crimes that he was charged with in the federal complaint.  *See* D.E. 18.  Alzahrani was later arraigned on August 24, 2023.

During the course of the investigation, the Government has learned about classified information that is related to this case.  It is therefore anticipated that CIPA will be utilized in this case in order to protect classified information.

## II.    OVERVIEW OF CIPA

CIPA, enacted by Congress in 1980, contains a set of procedures by which federal district courts rule on pretrial and trial matters concerning the discovery, admissibility, and use of classified information in criminal cases. *See United States v. Scarfo,* 180 F. Supp. 2d 572, 579 (D.N.J. 2001); *United States v. Elshazly, 2020 W.L. 6709362* (D.Conn. Nov. 16, 2020); *United States v.*

---

[1] Alzahrani was initially taken into state custody when the Essex County Prosecutor's Office filed charges against him on or about January 19, 2023 for burglary and theft.  Those charges were later dismissed after Alzahrani was charged federally.  Alzahrani was also charged by the Department of Homeland Security – Immigration and Customs Enforcement on or about January 19, 2023 with immigration offenses.

*Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994); *United States v. Lee*, 90 F. Supp. 2d 1324, 1325–26 (D.N.M. 2000). "Classified information," as referred to and defined in Section 1 of CIPA, includes "any information or material that has been determined by the United States Government pursuant to an Executive Order, statute or regulation, to require protection against the unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3 § 1(a). CIPA's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996). CIPA "evidence[s] Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial." *United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006).

The Supreme Court has long acknowledged the importance of protecting the nation's secrets from disclosure: "The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *Central Intelligence Agency v. Sims*, 471 U.S. 159, 175 (1985) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (*per curiam*)); *accord see Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("The [executive branch] has available intelligence services whose reports are not and ought not to be published to the world."). Given this compelling interest, federal courts have recognized that "[i]t is not in the national interest for revelation of either the

existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." *United States v. Lemonakis*, 485 F.2d 941, 963 (D.C. Cir. 1973).

CIPA was also enacted to enable district courts to evaluate potential classified information issues in criminal cases before trial, to prevent the problem of unanticipated disclosures of classified material. *See e.g., United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (CIPA was enacted "to prevent the problem of 'graymail,' where defendants pressed for the release of classified information to force the government to drop the prosecution"); *United States v. Ivy,* No. CRIM. A. 91-00602-04, 1993 WL 316215, at *5 (E.D. Pa. Aug. 12, 1993*)* ("CIPA provides a mechanism for protecting the unnecessary disclosure of classified information and for ensuring that those with access to such information not escape the sanctions of the law applicable to others") (citations omitted); *United States v. Lee*, 90 F. Supp. 2d 1324, 1325 n. 5 (D.N.M. 2000) (discussing the problem of "greymail"). CIPA provides district judges with a procedural framework "to rule on questions of admissibility involving classified information before introduction of evidence in open court [and] . . . permits the government to ascertain the potential damage to national security of proceeding with a given prosecution before trial." *Sarkissian*, 841 F.2d at 965 (quoting S. Rep. No. 96-823, at 1 (1980), reprinted in 1980 U.S.C.C.A.N. 4294, 4297). Therefore, the majority of CIPA's provisions set forth pretrial procedures to determine the relevance and admissibility of classified

4

information, in order to eliminate surprise and the risk of unanticipated disclosures. *See id.*

CIPA neither creates any new right of discovery nor expands the rules governing the admissibility of evidence. *See United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevance of probative evidence."); *accord United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) ("CIPA does not create any discovery rights for the defendant."); *United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) (*en banc*). Rather, CIPA applies preexisting discovery law in criminal cases to classified information and restricts the discovery of classified information to protect the government's national-security interest. *See United States v. Scarfo*, 180 F. Supp. 2d 572, 583 (D.N.J. 2001) ("CIPA strikes a balance between national security interests and a criminal defendant's right to discovery. . . ."); *United States v. Lustyik*, 833 F.3d 1263, 1271 (10th Cir. 2016) ("While CIPA could provide procedural guidance to a district court in restricting or denying review of classified information, it does not provide [defendant] a freestanding right to classified information"); *United States v. Pickard*, 236 F. Supp. 2d 1204, 1209 (D. Kan. 2002) (quoting *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("[CIPA] contemplates an application of the general law of discovery in criminal cases to the classified information area with limitations imposed based on the sensitive nature of the classified information"); *see also Baptista-Rodriguez*, 17 F.3d at 1363-64; *Sarkissian*, 841 F.2d at 965 (Congress intended CIPA to "clarify the

court's power to restrict discovery of classified information"). Therefore, "[w]hile CIPA creates no new rule of evidence regarding admissibility, the procedures it mandates protects a government privilege in classified information similar to the informant's privilege . . . ." *Yunis*, 867 F.2d 617 at 623.[2]

The government produces discoverable information to the defense in cases involving classified information; but the discovery of classified information must be actually "relevant" and "helpful to the defense of the accused." *Yunis*, 867 F.2d 617 at 621 (stating "classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege, but that the threshold for discovery in this context further requires that a defendant seeking classified

---

[2] In the seminal D.C. Circuit case *Yunis*, the court recognized that the government's privilege concerns not merely the content of any particular conversation, but the privilege often involves the government's ability to collect the information:

> [T]he government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all. Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods. Implicit in the whole concept of an informant-type privilege is the necessity that information-gathering agencies protect from compromise "intelligence sources and methods." The Supreme Court has expressly recognized the legitimacy of this concern in construing the National Security Act of 1947, 61 Stat. 498, 50 U.S.C. § 403(d)(3), in *CIA v. Sims,* 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985).

*Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). Thus, courts understand the need to protect the sources and methods of collecting information as well as the information itself.

information is entitled only to information that is at least 'helpful to the defense of [the] accused'").

CIPA does not "expand the traditional rules of discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990), *accord United States v. McVeigh*, 923 F. Supp 1310, 1314 (D. Colo. 1996) ("CIPA does not enlarge the scope of discovery or of Brady."); *United States v. Pickard*, 236 F. Supp. 2d 1204, 1209 (D. Kan. 2002) ("CIPA does not create any new right of or limits on discovery in the area of classified information") (citations omitted).

District courts employ a step-by-step analysis to review the government's CIPA Section 4 submissions requesting the court's approval to withhold, or "delete," discovery of classified information. First, the Court must determine whether the classified information is discoverable under the traditional rules of criminal discovery. *See e.g.*, *United States v. Sedaghaty*, 728 F.3d 885, 904 (9th Cir. 2013) (citing *United States v. Rewald*, 889 F.2d 836, 847-48 (9th Cir. 1989)). Second, the Court must assess whether the government has properly asserted a privilege over the classified information. *Id.*[3] Third, the Court must

---

[3] To invoke CIPA's procedures under Section 4, the government must establish that the information is indeed classified. *See e.g.*, *United States v. El-Mezain*, 664 F.3d 467, 523 (5th Cir. 2011); *Mejia*, 448 F.3d at 456. To do so, the government ordinarily submits a declaration executed by an official with classification review authority (1) describing the reasons for the classification of the information at issue; and (2) setting forth the potential harm to national security that could result from its disclosure. *See also United States v. Libby*, 429 F. Supp. 2d 18, 22 (D.D.C. Apr. 5, 2006) (amended by *United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. May 3, 2006). Courts have recognized that the determination of whether to classify information and the proper

consider whether the classified information at issue is both "relevant and helpful to the defense of an accused." *Id.* (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)). Classified information that is not both discoverable under the ordinary rules of discovery (Rule 16, Jencks, *Brady*, *Giglio* and their progeny) and relevant and helpful to the defense may be "deleted," that is, withheld from discovery; classified information that is relevant and helpful to the defense may be produced to the defense, and the government may make such productions through substituted summaries, if the statement or summary of the classified information would provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information. *Id.* (citing 18 U.S.C. App. 3 § 6(c)(1)). Finally, in determining whether to authorize the government to withhold classified materials from discovery under CIPA § 4, federal courts have applied the balancing test set forth in *Roviaro v. United States*, 353 U.S. 53 (1957). *See, e.g.*, *El-Mezain*, 664 F.3d 467 at 520-21. That is, just because classified information is relevant and helpful does not automatically render such evidence discoverable. *See Roviaro*, 353 U.S. at 62; *cf. El-Mezain*, 664 F.3d at

---

classification thereof is a matter committed solely to the Executive Branch: "The Government . . . may determine what information is classified. A defendant cannot challenge this classification. A court cannot question it." *Smith*, 750 F.2d 1215 at 1217 (4th Cir. 1984) *vacated on other grounds*, 780 F.2d 1102 (4th Cir. 1985); *See also El-Mezain*, 664 F.3d 467, 523 (5th Cir. 2011) (declining to "second guess . . . the Government's determination of what is properly considered classified information."); *United States v. Abu Ali*, 528 F.3d 210, 253 (4th Cir. 2008) ("[W]e have no authority [] to consider judgments made by the Attorney General concerning the extent to which information in issue here implicates national security."); *United States v. Muza*, 833 F. Supp. 752, 755 (E.D. Mo. 1993) ("The determination whether to designate information as classified is a matter committed to the executive branch.").

523 (citing *Roviaro*, 353 U.S. at 60-61) (noting that even when the government properly invokes its privilege, courts must next consider whether the privilege should yield when balancing other interests). Courts must determine whether, on balance, overriding national security concerns outweigh the defendant's need for the information.  *Sarkissian*, 841 F.2d at 965; *Pringle*, 751 F.2d at 426-29; *Rahman*, 870 F. Supp. at 52-53.

### A.  Section 1—Definitions

For the purpose of CIPA, "classified information" includes any information or material determined by the United States Government to require protection against unauthorized disclosure for reasons of national security. 18 U.S.C. App. 3 § 1(a). "National security" means the national defense and foreign relations of the United States. *Id.* § 1(b). *See also* Executive Order 13526 (defining classified information). CIPA applies equally to classified testimony and classified documents. *See, e.g., United States v. Lee*, 90 F. Supp. 2d 1324, 1326 n.1 (D.N.M. 2000) (citing *United States v. North*, 708 F. Supp. 399, 399-400 (D.D.C. 1988)); *Kasi v. Angelone*, 200 F. Supp. 2d 585, 596-97 (E.D. Va. 2002) (applying CIPA to classified testimony).

### B.  Section 2—Pretrial Conference

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. 3 at § 2. Once a party files such a motion, Section 2 states that the district court "shall promptly hold a pretrial

9

conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." *Id.* During the pretrial conference, district courts generally establish the trial schedule for the case, including the timing of discovery requests by the defense, the defense's pretrial notice to the United States under CIPA Section 5 whereby the defendant identifies an intent to disclose classified information, if any, and explaining the need for such a disclosure, and hearings concerning the use, relevance, and admissibility of classified information pursuant to CIPA Section 6. *Id.* In addition, the court may consider any matters that relate to classified information or that may promote a fair and expeditious trial. *Id.*

No substantive issues concerning the use of classified information are to be decided in a Section 2 pretrial conference. *See* S. Rep. No. 96-823, at 5-6, reprinted in 1980 U.S.C.C.A.N. 4294, 4298-99 (96th Cong. 2d Sess.). To foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant, or his attorney, at the pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his attorney. *See* 18 U.S.C. App. 3 § 2.

## C.   <u>**Section 3—Protective Order**</u>

CIPA Section 3 mandates that federal district courts issue a protective order upon motion by the United States to protect against the improper disclosure of any classified information produced by the government to the defense. *Id.* § 3. Section 3 was intended "to codify the well-established practice,

based on the inherent authority of federal courts, to issue protective orders," *Pappas*, 94 F.3d at 801, as well as to supplement the Court's authority under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders in connection with the discovery process.[4] In contrast to Rule 16(d)(1)'s discretionary authority, however, Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution, *e.g. Brady* and Jencks material." *Id.*[5]

**D.    Section 4—Protection of Classified Information During Discovery**

Both CIPA § 4 and Rule 16(d)(1) of the Federal Rules of Criminal Procedure expressly authorize the United States to submit *ex parte* motions seeking an *in camera* review of classified information that may be potentially discoverable in a federal criminal case. Section 4 of CIPA authorizes federal district courts to deny, or otherwise restrict, discovery of classified documents and information in the possession, custody, or control of the United States. 18 U.S.C. App. 3 § 4; *see e.g. United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C.

---

[4] Rule 16(d)(1) provides in relevant part that "at any time the court may, for good cause, deny, restrict or defer discovery or inspection, or grant other appropriate relief."

[5] It is important to note that possession of a security clearance does not automatically entitle its possessor to access classified information. *United States v. Daoud*, 755 F.3d 479, 484 (7th Cir. 2014) *supplemented*, 761 F.3d 678 (7th Cir. 2014) and *cert. denied*, 574 U.S. 1158, 135 S.Ct. 1456 (Mem.) (2015). Without a "need-to-know," a defense counsel's security clearance does not allow him or her access to classified information. *Id.* In addition, the Government's interest in maintaining the confidentiality of classified information is not diminished because defense counsel possesses a security clearance to review classified material. *El-Mezain*, 664 F.3d at 568.

Cir. 1998); *Yunis*, 867 F. 2d at 619-625.  Similarly, the Federal Rules of Criminal Procedure provide, in pertinent part, that district courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).  The legislative history of CIPA makes clear that Section 4 was intended to clarify the district court's power under Rule 16(d)(1) to deny, or restrict, discovery to protect national security. *See* S. Rep. No. 96-823 at 6, 1980 U.S.C.C.A.N. at 4299-4300; *see also Aref*, 533 F.3d at 78-79; *Smith*, 780 F.2d at 1110 (holding the defendant's right to discovery must be balanced against public's interest in nondisclosure); *United States v. Pringle*, 751 F. 2d 419, 427 (1st Cir. 1985).

Section 4 provides that a district court:

upon a sufficient showing may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The Court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

18 U.S.C. App. 3 § 4. Like Federal Rule of Criminal Procedure 16(d)(1), Section 4 provides that the government may demonstrate the use of alternatives to be warranted through an *in camera, ex parte* submission to the court. *Id.*; *see United States v. Abu-Jihaad,* 630 F.3d 102, 140 (2nd Cir. 2010); *United States v. Aref*, 533 F.3d at 81; *Yunis*, 867 F.2d 617, 622-23 (D.C. Cir. 1989); *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988); *Pringle*, 751 F.2d 419, 427 (1st Cir. 1984). In essence, Section 4 allows the United States to request *ex*

*parte* and *in camera* review of its decisions regarding the discoverability of classified information and, if determined to be discoverable, whether government-proposed summaries, or substitutions, would place the defendant in substantially the same position as the underlying classified information. *See*, *e.g.*, *United States v. Amawi*, 695 F.3d 457, 472-473 (6th Cir. 2012) ("[E]very court that has considered this issue has held that CIPA permits *ex parte* hearings."); *United States v. Hanna*, 661 F.3d 271, 295 (6th Cir. 2011); *see also United States v. Libby*, 429 F. Supp. 2d 18, 22 (D.D.C. Apr. 5, 2006) (amended by *United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. May 3, 2006). If so, district courts issue orders approving of the government-proposed summaries and substitutions, which the government then would produce to the defense.[6]  For example, the government may request, pursuant to Section 4, that the Court approve of the government's decision to delete discovery of classified information that is not both discoverable under the ordinary rules of discovery (Rule 16, Jencks, Brady, Giglio and their progeny) and relevant and helpful to the defense. *See Amawi*, 695 F.3d at 472--73; *Hanna*, 661 F.3d at 295-96.  Alternatively, the government may file a motion under Section 4 to delete specific classified information from a document that otherwise contains discoverable information, or to substitute an unclassified summary, in lieu of

---

[6] The government's discovery review of classified information is consistent with Rule 16, *Brady v. Maryland* (373 U.S. 83 (1963)), *Giglio v. United States* (405 U.S. 150 (1972)), the Jencks Act, and other discovery requirements. The government will produce in original form or through an appropriate summary or substitution, any information that is relevant and actually helpful to the material preparation of the defense. *See e.g., Amawi,* 695 F.3d at 472-473 (6th Cir. 2012)*; Ivy,* 1993 WL 316215, at *2-5; *Hanna,* 661 F.3d at 295.

the underlying classified document. *Amawi*, 695 F.3d at 472-73; *Hanna*, 661 F.3d at 295-96. The government's Section 4 filings, including all attachments, must remain *ex parte* and *in camera*, under seal, and preserved in the record to be made available to the appellate court in the event of an appeal. 18 U.S.C. App. 3 § 4.

Although relevance is a "low hurdle," when seeking disclosure of classified information, the defendant must provide more than "a mere showing of theoretical relevance." *Id.* Rather, to overcome the government's classified information privilege, the defense "is entitled only to information that is at least 'helpful to the defense of [the] accused." *Id.* (citing *Roviaro*, 353 U.S. at 60-61).

**E. Sections 5 and 6—Procedure for Cases Involving Classified Information Possessed by the Defendant**

Sections 5 and 6 of CIPA apply when a criminal defendant who already possesses classified information seeks to disclose such information during the course of a trial, or pretrial proceeding. *See, e.g.*, *Baptista-Rodriguez*, 17 F.3d at 1363; *Sarkissian*, 841 F.2d at 965-66; United States v. *Collins*, 720 F.2d 1195, 1199-1200 (11th Cir. 1983); *Ivy,* 1993 WL 316215, at *1-2. Section 5 requires the defendant to provide timely written notice to the court and the government describing any classified information that the defendant reasonably expects to disclose during any pretrial, or trial, proceeding. *See* 18 U.S.C. App. 3 § 5(a). The defendant must provide notice "within the time specified by the court, or where no time is specified, within thirty days prior to trial." *Id.* Although the description of the classified information may be brief, it must be particularized

and set forth the specific classified information that the defendant reasonably believes to be necessary for the defense. *See Collins*, 720 F.2d at 1199. The defendant must provide formal notice under Section 5 even if the government knows the defendant may assert a defense involving classified information. *See United States v. Badia*, 827 F.2d 1458, 1465-66 (11th Cir. 1987).

Section 5 specifically prohibits the defendant from disclosing any classified information until after (1) providing notice; (2) allowing the government to seek a determination of the use, relevance, and admissibility of such information under Section 6; and (3) the time for any interlocutory appeal permitted under Section 7 expires. 18 U.S.C. App. 3 § 5(a). If the defendant fails to provide the requisite pretrial notice, the court may prohibit the disclosure of the classified information by the defense, and it may prohibit the defendant from examining any witness with respect to such information. *Id.* § 5(b).

After the defendant files notice under Section 5 of CIPA, the government may request that the court conduct a hearing to make "all determinations concerning the use, relevance or admissibility" of the defense-noticed classified information. 18 U.S.C. App. 3 § 6(a). Upon such a request, the court *shall* conduct such a hearing, and it must conduct the hearing *in camera* if the Attorney General certifies to the court that a public proceeding may result in the disclosure of classified information. *Id.* Prior to the hearing, the government must first provide the defendant with notice of the classified information that will be at issue. *Id.* § 6(b)(1). If the particular information previously was not

available to the defendant, the government may, with the court's approval, provide a generic description of the material to the defendant. *Id.* The court also may order the government to provide the defendant with "details as to the portion of the indictment or information at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing." *Id.* § 6(b)(2).

If the government requests a hearing before the proceeding at which the defendant expects to disclose the classified information, the court must issue a ruling before the proceeding commences.  *Id.* § 6(a). The district court's ruling must be in writing and should set forth the basis for its determination as to each item of classified information. *Id.* After an *in camera* hearing, if the district court determines that the classified information at issue may not be disclosed during the proceeding, the record of the hearing must be sealed and preserved for use in the event of an appeal. *Id.* § 6(d). If the court finds the classified information useful, relevant, or otherwise admissible, the government may ask for the court to approve of (1) the government-proposed substitution of a statement admitting relevant facts that the specific classified information would tend to prove; or (2) the government-proposed substitution of a summary of the classified information. *Id.* § 6(c)(1).

If the court denies the government's motion for substitution under Section 6(c), CIPA permits the government, by affidavit from the Attorney General, to object to the disclosure of the classified information at issue.  *Id.* § 6(e)(1). Upon the government's filing of the Attorney General's affidavit, the court "shall order that the defendant not disclose or cause the disclosure of

such information," and it may impose a sanction against the government to compensate for the defendant's inability to present proof of the specific item of classified information. *See* S. Rep. 96-823 at 9, 1980 U.S.C.C.A.N. at 4302-3. Section 6(e)(2) provides a sliding scale of possible sanctions, which include dismissal of specific counts, finding against the government on an issue to which the classified information related, striking or precluding testimony of a witness, or dismissing the indictment. 18 U.S.C. App. 3 § 6(e)(2).  An order imposing a sanction shall not take effect until the government has the opportunity to appeal the order under Section 7, or thereafter withdraw its objection to the disclosure of the information. *Id.*

Whenever the court rules at a Section 6(a) hearing that classified information is admissible, the court must require the government to provide the defendant with information it expects to use to rebut the classified information, "unless the interests of fairness do not so require." *Id.* § 6(f). The court may place the United States under a continuing duty to disclose rebuttal information. *Id.* If the government fails to comply, the court may exclude the rebuttal evidence and prohibit the government from examining any witness with respect to such information. *Id.*

F.    **Section 7—Interlocutory Appeal**

Section 7 permits the United States to take an expedited interlocutory appeal to the appellate court if the district court: (a) authorizes the disclosure of classified information; (b) imposes sanctions for nondisclosure of classified information; or (c) refuses to issue a protective order sought by the United

17

States to prevent the disclosure of classified information. *Id.* § 7. If an appeal is taken, the court must not commence the trial until the appeal is resolved. *Id.* Such an appeal and decision does not affect the defendant's right to lodge a subsequent appeal upon conviction (if any) of an adverse ruling by the trial court. *Id.* § 7(b).

G.   **Section 8—Procedures Governing the Introduction of Classified Information at Trial or at Pretrial Proceeding**

Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence. *Id.* § 8. Specifically, Section 8(a) provides that classified documents may be admitted into evidence without changing their classification status. This provision allows the classifying agency, upon completion of the trial, to decide whether information has been so compromised that it could no longer be regarded as classified. *See* S. Rep. No. 96-823 at 10, 1980 U.S.C.C.A.N. at 4304.

Section 8(b) permits the court to order admission into evidence of only a part of a document when fairness does not require the whole document to be considered by the factfinder. The purpose of this provision is to clarify Federal Rule of Evidence 106, known as the rule of completeness, in order to prevent unnecessary disclosure of classified information. *Id.* at 10-11, 1980 U.S.C.C.A.N. at 4304.

Section 8(c) provides a procedure to address the problem presented at a proceeding when the defendant's counsel asks a question, or embarks on a line of inquiry, that would require the witness to disclose classified information. *Id.*

18

at 11, 1980 U.S.C.C.A.N. at 4304. Specifically, under Section 8(c), the government may object to any question, or line of inquiry, that may require the witness to disclose classified information not previously held to be admissible. 18 U.S.C. App. 3 § 8(c). Following an objection, the court "shall take such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information." *Id.* In effect, this procedure supplements the notice provision under Section 5 and the hearing provision in Section 6(a) to cope with situations that cannot be handled effectively by those sections, such as where the defense does not realize that the answer to a given question will reveal classified information. S. Rep. No. 96-823 at 11, 1980 U.S.C.C.A.N. at 4304-5.

H.   **Section 9—Security Procedures**

Section 9 requires the Chief Justice of the United States, in consultation with other executive branch officials, to prescribe rules establishing procedures to protect classified information in the custody of federal courts from unauthorized disclosure. 18 U.S.C. App. 3 § 9(a). Security Procedures established pursuant to this provision are codified directly following Section 9 of CIPA.

I.   **Section 9A—Coordination Requirement**

Section 9A requires an official of the Department of Justice and the appropriate United States Attorney to provide timely briefings of the fact and status of a prosecution involving classified information to a senior official of the agency in which the classified information originated. *Id.* § 9A(a).

19

J.      **Section 10—Identification of Information Related to the National Defense**

This section applies in criminal prosecutions in which the government must prove as an element of the crime charged that certain material relates to the national defense, or otherwise constitutes classified information. *See* S. Rep. 96-823 at 11-12, 1980 U.S.C.C.A.N. at 4305. In such a circumstance, Section 10 requires the government to inform the defendant of which portions of the material it reasonably expects to rely upon to prove the classified-information element of the crime. 18 U.S.C. App. 3 § 10. Section 10 likely will not be applicable in this case.

K.      **Sections 11-15 - Miscellaneous Provisions**

The remaining sections of CIPA contain various miscellaneous provisions. Section 11 provides for amendments to Sections 1 through 10 of CIPA. Section 12 requires the Attorney General to issue guidelines regarding the exercise of prosecutorial discretion over cases in which classified information may be revealed and requires preparation of written findings when prosecution of such cases is declined. Section 13 requires the Attorney General periodically to report such declination decisions to Congress and, when necessary, to report on the operation and effectiveness of CIPA. Section 14 identifies the senior officials to whom the functions and duties of the Attorney General under CIPA may be delegated.  Section 15 provides the effective date of CIPA.

### III.   MOTION TO DESIGNATE CLASSIFIED INFORMATION SECURITY OFFICER

In anticipation of the issues that may be raised in this case, the

government requests that the Court designate a Classified Information Security

Officer ("CISO") pursuant to Section 2 of the Revised Security Procedures

established under Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the

United States and promulgated pursuant to Section 9 of CIPA. That section

provides that:

> In any proceeding in a criminal case or appeal therefrom in which classified information is within, or is reasonably expected to be within, the custody of the court, the court will designate a 'classified information security officer.' The Attorney General or the Department of Justice Security Officer will recommend to the court a person qualified to serve as a classified information security officer. This individual will be selected from the Litigation Security Group, Security and Emergency Planning Staff, Department of Justice, to be detailed to the court to serve in a neutral capacity.

Revised Security Procedures established under Pub. L. 96-456, 94 Stat. 2025 §

2. Classified Information Security Officers[7] designated pursuant to this process

are responsible for the security of all classified information in the court's

custody and assist the court with appropriate security clearances for court

staff as well as the handling and storage of any classified materials including

any pleadings or other filings related to CIPA proceedings. *Id.*

As set forth in the attached proposed order, the Government

recommends that the Court designate Mr. Harry J. Rucker as the CISO for this

---

[7] In the original Security Procedures, the title of the position was Court Security Officer. In the revised security procedures promulgated by Chief Justice Roberts, the position is now known as Classified Information Security Officer.

case, to perform the duties and responsibilities prescribed for CISO's in the Security Procedures promulgated by the Chief Justice. Mr. Harry J. Rucker is an employee of the Litigation Security Group of the U.S. Department of Justice with demonstrated competence in security matters. The Department of Justice Security Officer will certify that Mr. Harry J. Rucker holds all proper security clearances by separate written correspondence officially nominating Mr. Harry J. Rucker as CISO. Mr. Harry J. Rucker has previously served as CISO in other matters.  The Government further requests that the Court designate the following persons as alternate CISOs, to serve in the event Mr. Harry J. Rucker is unavailable: Jennifer H. Campbell, Daniel O. Hartenstine, Daniella M. Medel, Matthew W. Mullery, and Winfield S. "Scooter" Slade.  Each of these alternate CISOs are also from the Litigation Security Group of the Department of Justice and hold appropriate security clearances.

## IV.   MOTION FOR A STATUS CONFERENCE PURSUANT TO SECTION 2 OF CIPA

The government is in the process of reviewing material that is currently classified. Some of this material may be subject to disclosure in advance of trial and could raise issues of national security that the Court will need to address under CIPA. Accordingly, pursuant to Section 2 of CIPA, the United States respectfully requests that the Court schedule a pretrial conference to establish a discovery and motion schedule relating to any classified information.

At the Section 2 pretrial conference, the government will provide an estimate of the time necessary to conduct a complete review of any potentially relevant classified information. Based on that estimate, the government will

provide a proposed schedule for the filing of motions under CIPA Section 3 relating to protective orders, and under CIPA Section 4 relating to the deletion, substitution, or disclosure of classified information. Because of the classified nature of certain information, the government will be unable to provide the court with specifics in open court (e.g., the type of information at issue, the amount of information at issue, the period of time when such information was collected, whether agencies other than the FBI are involved, etc.). If the Court so directs, the government will be prepared to present this information to the Court orally in an ex parte, in camera hearing.

Therefore, pursuant to Section 2 of CIPA, the United States respectfully requests that on January 3, 2024, the date of the next scheduled status conference, the Court establish a discovery and motion schedule relating to any classified information in the event that a CISO has been designated by that date.

## V.     CONCLUSION

The United States anticipates that issues relating to classified information may arise in connection with this case. Accordingly, the United States respectfully provides this memorandum of law to provide the Court with a detailed description of CIPA's procedures to address issues related to classified information and to protect classified information before, during, and after trial in this case. In addition, the Government requests that the Court enter the attached proposed order, appointing a Classified Information Security Officer ("CISO") in this matter to assist the Court and court personnel in any

further matters related to CIPA. For the foregoing reasons, pursuant to CIPA

Section 2, the government respectfully requests that the Court schedule a

pretrial conference on January 3, 2024 to address scheduling matters in light

of the existence of classified materials.

Respectfully submitted,

Philip R. Sellinger
United States Attorney

By:  _____
BENJAMIN LEVIN
Assistant United States Attorney

## <u>Certificate of Service</u>

I hereby certify that on this 13th day of December, 2023, I electronically filed the foregoing **UNITED STATES' MEMORANDUM OF LAW REGARDING THE CLASSIFIED INFORMATION PROCEDURES ACT AND MOTIONS TO DESIGNATE CLASSIFIED INFORMATION SECURITY OFFICER AND FOR A PRETRIAL CONFERENCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for the Defendant.